# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**MALEAK WILSON,**

       **Petitioner,**

**v.**                                               **Case No. 5:13-cv-22469**

**TERRY O'BRIEN, Warden,**
**Federal Correctional Institution-Hazelton,**

       **Respondent.[1]**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), and Respondent's Response to the Order to Show Cause, wherein Respondent moves for the petition to be dismissed, or in the alternative, requests that judgment be entered in Respondent's favor, (ECF No. 10). This case is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant

---

[1] Wilson did not name a respondent in his petition, and in his contemporaneously filed brief, Wilson named the United States of America as the respondent. (ECF No. 1 at 1; ECF No. 2 at 1). Generally, the proper respondent in a § 2241 action is the petitioner's custodian, i.e. the warden of the institution where the petitioner is imprisoned. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). In directing that an answer to the petition be filed, the undersigned substituted the Warden of the Federal Correctional Institution-Beckley in West Virginia as Respondent because Wilson was housed in FCI-Beckley at the time that he filed his petition. (ECF No. 8); *see Rice v. Hogsten*, No. 1:12-0406, 2014 WL 4656119, at *1 n.1 (S.D.W.Va. Sept. 16, 2014) (recognizing that § 2241 petition must be filed in district where prisoner is confined and that jurisdiction is determined at time petition is filed). As of August 17, 2015, Wilson is an inmate at the Federal Correctional Institution-Hazelton in West Virginia. Pursuant to Federal Rule of Civil Procedure 25(d), Terry O'Brien will be substituted as Respondent in this case.

to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED**, that judgment be **GRANTED** in Respondent's favor, and that this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

## I.   Factual and Procedural History

On April 6, 2011, while imprisoned at the Federal Correctional Institution-Fort Dix in New Jersey, Petitioner Maleak Wilson ("Wilson") received an incident report from a Special Investigative Services Technician for possession of a hazardous tool.[2] (ECF No. 10-2 at 2). The technician indicated that he or she had received information Wilson had been using a cellular telephone ("cell phone") to access Facebook. (*Id.*) The technician was able to find a Facebook page belonging to a "Maleak Wilson" and observed on that page a picture of Wilson that had been taken in a bathroom at FCI-Fort Dix. (*Id.*) The incident report noted that the "tile work, style and paint color" supported the conclusion that the picture had been taken at that location. (*Id.*) Reviewing Wilson's Facebook page in more detail, the technician found that posts had been made to the page by Wilson via "Mobile Web" between September 2, 2010 and March 24, 2011.[3] (*Id.*) Wilson was provided a copy of the incident report on the same day that it was created. (*Id.*)

That same day, a staff member was assigned to investigate the underlying facts of

---

[2] "The discipline process starts when staff witness or reasonably believe that [an inmate] committed a prohibited act. A staff member will issue [the inmate] an incident report describing the incident and the prohibited act(s) [the inmate is] charged with committing. [The inmate] will ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate] involvement in the incident." 28 C.F.R. § 541.5(a).

[3] The technician noted that "Wilson ha[d] accessed Facebook and posted statements and comments via Mobile Web (cell phone)." (ECF No. 10-2 at 2).

the incident report.[4] (*Id.* at 3). The staff member advised Wilson of his right to remain silent and informed him that any silence could be used to draw an adverse inference against him, but would not be sufficient to support a finding that he committed a prohibited act. (*Id.*) Wilson acknowledged that he understood his rights, and he asserted that the picture on his Facebook page was taken at FCI-Gilmore. (*Id.*) Wilson further indicated that the Facebook page was maintained by someone "on the outside," who updated the page after talking with him through the institutional phone system. (*Id.*) He denied ever using a cell phone while incarcerated. (*Id.*) Wilson declined to have the staff member interview any witnesses. (*Id.*) Based on the information provided by the technician, the staff member found that the charge was "true and valid," and the staff member forwarded the incident report to the Unit Disciplinary Committee ("UDC"). (*Id.*)

On April 8, 2011, a UDC hearing was conducted.[5] (*Id.* at 2). Wilson reiterated that the Facebook page was maintained by "a person on the outside." (*Id.*) In addition, Wilson stated that he wrote or called Voices for Inmates and that they posted information on his Facebook page. (*Id.*) The UDC referred the matter to a Discipline Hearing Officer ("DHO") for further review. (*Id.*) The UDC also informed Wilson of his

---

[4] An investigation commences after the inmate receives an incident report. 28 C.F.R. § 541.5(b). During the investigation, the investigator will inform the inmate of the charges against him or her and his or her rights. *Id.* § 541.5(b)(1). The investigator will then ask whether the inmate wishes to provide a statement. *Id.* § 541.5(b)(2). In addition to providing a statement, the inmate may request that other persons be interviewed or that other evidence be obtained. *Id.*

[5] The UDC reviews an incident report after the staff investigation is complete. 28 C.F.R. § 541.7. The accused inmate is permitted to appear before the UDC during the incident report review, and the inmate may make a statement or present documentary evidence. *Id.* § 541.7(e). The UDC's decision is "based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* After reviewing all of the evidence, the UDC may find that the inmate did or did not commit the act, or refer the incident report to a Discipline Hearing Officer ("DHO"). *Id.* § 541.7(a). If the incident report is referred to the DHO, then the UDC must advise the inmate of his or her rights at the DHO hearing. *Id.* § 541.7(g).

rights at the DHO hearing in writing, including his right to have a written copy of the charges against him provided to him twenty-four hours prior to the hearing, the right to have a staff representative, the right to call witnesses and present documentary evidence, the right to present a statement or remain silent, the right to be present during the hearing, the right to be advised of the DHO's decision, and the right to appeal the DHO's decision. (ECF No. 10-2 at 7); *see also* 28 C.F.R. § 541.8(d)-(f), (h) (describing inmate's rights at DHO hearing). Wilson signed the document acknowledging that he had been advised of his rights at the DHO hearing. (ECF No. 10-2 at 7). Wilson also completed a Notice of Discipline Hearing Before the DHO form that day. (*Id.* at 5). On that form, Wilson requested that Rod Mitchell serve as his staff representative, and he further indicated that he did not wish to call any witnesses at the DHO hearing. (*Id.*)

On April 29, 2011, a DHO hearing was held on the charge of possessing, manufacturing, or introducing a hazardous tool, which is a violation of Code 108 as described in the Inmate Admission and Orientation Handbook and Table 1 of 28 C.F.R. § 541.3 (2011).[6] (ECF No. 10-3 at 2; ECF No. 2 at 9-10). Wilson was provided a staff representative at the hearing, and he did not request that any witnesses be present. (*Id.*) After being again informed his rights, Wilson denied the charge. (*Id.*) He explained that the picture on his Facebook was taken in "the rec area" and that he set up his Facebook account, but his nieces were responsible for it. (*Id.*) Wilson asserted that he called his nieces on the phone and instructed them what to post on his Facebook page. (*Id.*) The

---

[6] The 2010 version of Code 108 proscribes the"[p]ossession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R. § 541.13 tbl.3 (2010). Code 108 was updated in March 2011 and prohibits the "[p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." 28 C.F.R. § 541.3 tbl.1 (2011).

4

DHO then asked if Wilson had directed his nieces to post: "Ah my phone is broke so nobody hit me on that phone." (*Id.*) Wilson did not respond to the DHO's question. (*Id.*) After considering Wilson's statements, the incident report, and photocopies of Wilson's Facebook page, the DHO found that the greater weight of evidence before him demonstrated Wilson had committed the prohibited act of possessing, manufacturing, or introducing a hazardous tool in violation of Code 108. (*Id.* at 3); *see* 28 C.F.R. § 541.8(f) ("The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). The DHO asserted that the Facebook post on which he specifically questioned Wilson corroborated the incident report and illustrated that Wilson possessed a cell phone or had access to a cell phone at the time of the post. (ECF No. 10-3 at 3). The DHO noted that cell phones had been used in the past "to arrange rendezvous for escapes" or "contraband introduction." (*Id.* at 4). In addition, the DHO insisted that a cell phone could be used to contact others "for illicit or illegal activities." (*Id.*) The DHO recounted a memorandum issued by Warden Donna Zickefoose wherein she stated that a cell phone "is considered a threat to the security and orderly running of the institution," and as such, a cell phone is considered a hazardous tool. (*Id.*) With respect to punishment, the DHO disallowed forty days of good conduct time, forfeited 432 days of non-vested good conduct time, required Wilson to spend thirty days in disciplinary segregation, and revoked various other privileges. (*Id.* at 3).

On May 18, 2011, Wilson was provided with the DHO's final report and advised of his right to appeal the DHO's decision.[7] (*Id.* at 4). Wilson appealed the DHO's decision,

---

[7] The DHO's report lists the inmate's name as "Mark Wilson." (ECF No. 10-3 at 2). However, the inmate registration number contained on the report matches Wilson's inmate number. (ECF No. 1 at 1; ECF No. 10-3 at 2).

and his appeal was subsequently denied. (ECF No. 10-1 at 2); *see* 28 C.F.R. § 541.8(i) (permitting appeal of DHO action through Administrative Remedy Program). Accordingly, it appears that Wilson has exhausted his administrative remedies related to the instant petition. (ECF No. 10-1 at 2).[8]

On September 3, 2013, Wilson filed his § 2241 petition challenging the disciplinary action discussed above. (ECF No. 1 at 1). In his petition, Wilson raises three grounds for relief: (1) he was "unjustly" given an incident report based on the incorrect finding that he had used a cell phone to take a photograph later posted to his Facebook account; (2) he was denied due process at the DHO hearing because he was not allowed to present Mr. Worthy, a recreation specialist, who would have testified that the photograph posted to Wilson's Facebook was an approved picture taken "in the gym"[9]; and (3) if he did possess a cell phone, he should not have been charged with violation of a hazardous tool under Code 108, rather he should have been charged with a violation of Code 305; therefore, charging him under Code 108 violated his rights under the *Ex Post Facto* Clause of Article I of the Constitution.[10] (ECF No. 1 at 6-7). In addition to his petition, Wilson filed a memorandum in support of his request for relief. (ECF No. 2). Wilson maintains in his memorandum that the Facebook photograph at issue was taken

---

[8] Although Respondent concedes that Wilson exhausted his administrative remedies, the only indication in the record that Wilson appealed the specific claims now raised in his § 2241 petition is Wilson's statement in his petition that he filed a "Central Office" administrative remedy appeal challenging the DHO's decision on due process grounds. (ECF No. 1 at 2); *see McClung v. Shearin*, 90 F. App'x 444, 445-46 (4th Cir. 2004) (finding that certain claims related to disciplinary hearing were procedurally defaulted where inmate failed to raise those claims in final administrative appeal). Nonetheless, given Respondent's concession, the undersigned addresses the merits of the petition below.

[9] In his petition, Wilson refers to a "Mr. Werthy." (ECF No. 1 at 6). In his memorandum, Wilson refers to a "Mr. Worthy." (ECF No. 2 at 1). As Wilson is referring to the same recreation specialist, the undersigned uses "Mr. Worthy" throughout this PF & R for purposes of consistency.

[10] Code 305 prohibits the "[p]ossession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." 28 C.F.R. § 541.3 tbl.1 (2011).

in "the gymnasium following proper recreation procedure," and not in the bathroom using a cell phone. (*Id.* at 1). Wilson contends that this fact "was verified by" Mr. Worthy and Mr. Vance, who are both recreation specialists. (*Id.*) Furthermore, Wilson claims that the DHO refused to let Mr. Worthy testify at the hearing without providing any explanation for his decision, which Wilson insists violated his right to due process. (*Id.* at 2). In addition, Wilson asserts that his nieces manage his Facebook account and that the statement regarding a broken phone on his Facebook page, which was posted by his nieces at his behest, was his way of telling others not to attempt to contact him by phone because he "did not wish to post in such a public manner that [he was] incarcerated." (*Id.* at 3). Finally, Wilson argues that he should have been charged with a violation of Code 305, which according to him, prohibits the possession of "anything not authorized for retention or receipt by the inmate, and not issued to him through regular chaneels [*sic*]." (*Id.*) In support of his position, Wilson avers that the Inmate Admission and Orientation Handbook was not updated to reflect that a cell phone constitutes a hazardous tool under Code 108 until August 1, 2011, which occurred after his DHO hearing. (*Id.* at 3-4).

After reviewing the petition, on October 30, 2013 the undersigned ordered Respondent to answer or respond to the application setting forth any reason why the relief sought by Wilson should not be granted. (ECF No. 8). Respondent filed a response to the undersigned's order on December 9, 2013, requesting that the petition be dismissed, or in the alternative, that judgment be entered in Respondent's favor. (ECF No. 10 at 1, 13). First, Respondent argues that Wilson was afforded all of the rights that he was entitled to under the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). (ECF No. 10 at 7). Specifically, Respondent

asserts that Wilson was afforded written notice of the charges, a copy of the incident report, an opportunity to make a statement and call witnesses at the DHO hearing, a neutral and detached decision-maker, and a written statement of the DHO's decision. (*Id.* at 7-8). Second, Respondent avers that there is sufficient evidence to support the DHO's decision, including the written report by the investigating staff member, Wilson's own statements and silence in response to the broken phone question at the hearing, and the printouts of Wilson's Facebook page displaying "numerous mobile updates" and "first person language" used in those Facebook posts. (*Id.* at 8-11). Finally, Respondent contends that a number of other federal courts, including this Court, have rejected the contention that a cell phone is not a hazardous tool. (*Id.* at 11-13). Furthermore, Respondent insists that Wilson was aware that possession of a cell phone was considered a violation of Code 108 because inmates were advised that a cell phone met the definition of a hazardous tool through numerous memoranda issued by prison officials, including one memorandum issued by the warden at FCI-Fort Dix while Wilson was an inmate there. (*Id.* at 11-12).

In the same order directing Respondent to answer or respond to the petition, the undersigned notified Wilson that he could file a reply to the answer or response within forty-five days of receiving Respondent's answer or response. (ECF No. 8 at 1). To date, Wilson has not filed a reply.

## II.    <u>Standard of Review</u>

Although Respondent requests dismissal, ostensibly under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, because *both parties* have presented, and rely on, evidence outside of the pleadings, Respondent's motion will be treated as one for summary judgment under Federal Rule

of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d) ("If, on motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see Riley v. Drew*, No. 4:12-1894-RMG, 2013 WL 2285941, at *1 n.1 (D.S.C. May 23, 2013) (noting that motion to dismiss in § 2241 action was converted into motion for summary judgment where parties submitted evidence outside of pleadings). It is important to note that Respondent's Response to Order to Show Cause requests alternative relief in the form of judgment in Respondent's favor, and the undersigned provided Wilson with an opportunity to reply to Respondent's response.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller &, Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). In addition, only genuine disputes over material facts "will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

Motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. See *Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990). Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson*, 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50).

## III. <u>Discussion</u>

### A. Wilson's Right to Call Witnesses

Beginning with Wilson's second ground for relief, he argues that his right to due process under the Fifth Amendment to the United States Constitution was violated when he was denied his right to call a witness at the DHO hearing without explanation. (ECF No. 2 at 2). In support of his position, Wilson has provided an affidavit wherein he

10

claims that he asked the DHO and his staff representative to call Mr. Worthy as a witness at his hearing. (*Id.* at 6). Wilson insists that testimony from Mr. Worthy would have proved he was innocent as Mr. Worthy would have testified that the picture posted to his Facebook page was taken in the gymnasium while following proper procedure. (*Id.* at 2).

"Federal prisoners must be afforded due process before they can be deprived of their good conduct time, in which there is a liberty interest. However, inmates do not enjoy 'the full panoply of due process rights due a defendant in ... [criminal] proceedings.'" *Thomas v. Phillips*, No. 5:09-cv-01519, 2012 WL 2064531, at *2 (S.D.W.Va. June 7, 2012) (quoting *Wolff*, 418 U.S. at 556) (brackets and ellipsis in original). In *Wolff*, the Supreme Court described the minimum due process protections that should be afforded to federal prisoners at disciplinary proceedings where revocation of good conduct time is a potential result. 418 U.S. at 563-70. Those protections include: "(1) advance written notice of the claimed violation at least twenty-four (24) hours before the hearing; (2) an opportunity to call witnesses and present documentary evidence in his defense when doing so will not be unduly hazardous to institutional safety or correctional goals; (3) a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken and (4) an impartial factfinder." *Thomas*, 2012 WL 2064531, at *2.

Here, Wilson insists that he was denied the opportunity to call Mr. Worthy as a witness at his hearing and that the DHO failed to articulate any reason why Mr. Worthy was not permitted to testify. However, Wilson was clearly made aware of his right to call witnesses before and at the DHO hearing, and records created before and after the hearing indicate that Wilson *waived* his right to call witnesses. On April 8, 2011, Wilson

11

signed a form acknowledging that he had been advised of his rights at the DHO hearing, including his right to call witnesses. (ECF No. 10-2 at 7). That same day, Wilson signed a Notice of Discipline Hearing Before the DHO form wherein Wilson checked the box signifying that he did not "wish to have witnesses" at his DHO hearing. (*Id.* at 5). At the DHO hearing, Wilson was read his rights. (ECF No. 10-3 at 2). Furthermore, the May 2011 DHO report specifies that Wilson did not request to call any witnesses at the DHO hearing. (*Id.*) Although Wilson now claims that he requested Mr. Worthy be called as a witness at the DHO hearing, this later, conflicting statement, without more, is insufficient to establish his claim. *See Parks v. Jordan*, No. 1:CV-13-2912, 2014 WL 517904, at *6 (M.D. Pa. Feb. 7, 2014) (rejecting inmate's "self-serving argument" to district court where inmate signed Notice of Discipline Hearing form waiving right to have staff representative at hearing and later claimed in habeas petition that he did not waive that right); *Bliss v. Sauers*, No. 3:CV-13-1958, 2013 WL 5208821, at *6 (M.D. Pa. Sept. 13, 2013) (rejecting argument that inmate was denied opportunity to present additional witnesses at hearing where form showed inmate requested only one witness at DHO hearing, that witness was called, and documentary evidence did not support inmate's claim to district court that he requested additional witnesses); *Pinson v. Rathman*, No. 1:10-cv-02477-IPJ-HGD, 2013 WL 4482408, at *9 (N.D. Ala. Aug. 20, 2013) (rejecting petitioner's argument that he was denied opportunity to call witnesses at disciplinary hearing where, other than petitioner's claims, there was no evidence contrary to the explicit waiver in administrative record); *Olalde v. Ziegler*, No. 5:11-0802, 2013 WL 1136967, at *4 (S.D.W.Va. Feb. 26, 2013) (denying petitioner's claim that he was refused right to call witnesses where DHO report indicated that petitioner did not request to call any witnesses), *report and recommendation adopted by* 2013 WL

12

1130813 (S.D.W.Va. Mar. 18, 2013); *Whentworth v. Fisher*, No. 10-2270, 2011 WL 5077612, at *9 (D. Minn. Oct. 7, 2011) (denying petitioner's claim that he was refused right to present witnesses at hearing where petitioner acknowledged rights in form, signed Notice of Discipline Hearing form indicating he waived right to call witnesses, and presented no evidence other than his own claim); *Foster v. Rivera*, No. 9:07-0576-HMH-GCK, 2007 WL 3002330, at *6 (D.S.C. Oct. 10, 2007) (rejecting inmate's later declaration to district court that he did not waive right to call witnesses at disciplinary hearing where Notice of Discipline Hearing and DHO report both indicated inmate waived right to call witnesses at DHO hearing); *Reyes v. Nash*, No. 05-2136, 2006 WL 361387, at *4 (D.N.J. Feb. 15, 2006) (finding similar claim baseless where DHO report showed petitioner waived right to call witnesses at hearing). Significantly, Wilson has not offered any explanation as to why he signed the Notice of Discipline Hearing form waiving his right to call witnesses if he indeed wished to call Mr. Worthy at the DHO hearing. Furthermore, other than his own affidavit, Wilson has not offered any evidence supporting his estimation of what Mr. Worthy's testimony would have included (*e.g.*, an affidavit from Mr. Worthy).

Even assuming, *arguendo*, that Mr. Worthy would have testified in the manner that Wilson asserts, Mr. Worthy's testimony would have been cumulative, and the DHO relied on other evidence to support his finding; therefore, any error at the DHO hearing was harmless. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (applying harmless error doctrine to petitioner's claim that he was denied right to call witnesses at disciplinary hearing); *Thomas*, 2012 WL 2064531, at *4 (using harmless error analysis in assessing petitioner's claim that he was denied opportunity to present documentary evidence at disciplinary hearing and finding any error was harmless where documentary

evidence was "repetitive"); *Garcon v. Owen*, No. 6:11-1411-MBS-KFM, 2012 WL 2458130, at * 4 (D.S.C. May 31, 2012) (finding any alleged error with respect to wrongfully induced waiver of right to call witnesses was harmless given "substantial evidence of the petitioner's guilt"). Here, the DHO considered Wilson's assertion at the hearing that the picture posted to his Facebook was taken in the "rec area," which, according to Wilson, is what Mr. Worthy would have stated as well. (ECF No. 10-3 at 2). The DHO ostensibly found that Wilson's statement was not credible in light of the technician's opinion that the style and color of the tile depicted in the photograph matched the restroom at FCI-Fort Dix, not the recreation area at that prison. (*Id.* at 3). Moreover, Wilson has been inconsistent in his protestation that the photograph was taken in the gymnasium at FCI-Fort Dix—when first questioned by the investigating staff member, Wilson declared that the photograph was taken at FCI-Gilmore, not FCI-Fort Dix. (ECF No. 10-2 at 3). Additionally, Wilson has failed to clarify how an allegedly approved photograph taken in the "rec area," would have ended up on his Facebook page. Finally, the DHO considered Facebook posts other than the photograph in concluding that Wilson had committed the code violation. (ECF No. 10-3 at 3); *see Garcon*, 2012 WL 2458130, at *4.

In sum, the undersigned **FINDS** that Wilson has not presented sufficient evidence to establish the existence of a factual issue as to his due process claim concerning the calling of witnesses. Even assuming that Wilson's affidavit is enough to create an issue of fact as to whether he asked for Mr. Worthy to testify at the DHO hearing, the undersigned **FINDS** that this claim would still fail, as any error by the DHO was harmless. Accordingly, the undersigned **RECOMMENDS** that Wilson's due process claim related to the presentation of witness testimony be **DENIED**.

**B. The Incident Report and the Merits of the DHO's Decision**

In his first ground for relief, Wilson contends that he was "unjustly" given an incident report based on the incorrect finding that he had used a cell phone to take a photograph later posted to his Facebook account. (ECF No. 1 at 6). In his memorandum, Wilson asserts that the Facebook photograph was taken in the gymnasium at the prison following proper procedure. (ECF No. 2 at 2). In addition, Wilson asserts that his Facebook account is managed by his nieces and that he does not "actively view or post anything" to his Facebook page. (*Id.* at 3). In support of his argument, Wilson has provided an affidavit from his mother, Laverne Wilson Frederick, who states that Wilson did not create a Facebook page, rather his thirteen-year-old niece created the page for him. (*Id.* at 11).

With respect to Wilson's contention that he was "unjustly" given an incident report, his claim is unconvincing. A staff witness need only have a reasonable belief that an inmate committed a prohibited act in order to issue an incident report. 28 C.F.R. § 541.5(a). Certainly, the facts contained in the incident report would support a reasonable belief that Wilson possessed a cell phone. (ECF No. 10-2 at 2). In particular, the technician noted that a photograph of Wilson, who appeared to be in the restroom at FCI-Fort Dix when the picture was taken, was uploaded to Wilson's Facebook page. (*Id.*) Moreover, the technician noted that numerous "Mobile Web" posts had been made from Wilson's account onto his Facebook page while he was incarcerated. (*Id.*) Accordingly, sufficient evidence existed to provide the technician with a reasonable belief that Wilson had possessed a cell phone while incarcerated.

To the extent that Wilson challenges the merits of the DHO's decision, that argument similarly fails. "[T]o satisfy the requirements of due process, a disciplinary

15

decision must also be supported by 'some evidence' to revoke good conduct time."
*Thomas*, 2012 WL 2064531, at *2 (quoting *Superintendent, Mass. Corr. Inst., Walpole
v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). In *Hill*, the Supreme
Court further explicated the "some evidence" standard:

> This standard is met if there was some evidence from which the conclusion
> of the administrative tribunal could be deduced.... Ascertaining whether
> this standard is satisfied does not require examination of the entire record,
> independent assessment of the credibility of witnesses, or weighing of the
> evidence. Instead, the relevant question is whether there is any evidence in
> the record that could support the conclusion reached by the disciplinary
> board.

472 U.S. at 455-56 (internal citation and markings omitted). According to Bureau of
Prisons regulations, where there is "conflicting evidence," the DHO's decision must be
based on "the greater weight of the evidence." 28 C.F.R. § 541.8(f); *see also Denny v.
Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) (explaining same).

    Wilson essentially raises two points in attacking the merits of the DHO's decision.
First, as mentioned above, Wilson asserts that the photograph of him posted on his
Facebook page was taken following the proper procedure in the gymnasium. (ECF No. 2
at 2). Second, Wilson insists that his nieces manage his Facebook account. (*Id.* at 3).
With respect to Wilson's first contention, the technician found that the background style
and color of the tile depicted in the photograph matched the restroom at FCI-Fort Dix,
not the recreation area. (ECF No. 10-3 at 3); *see Lloyd v. Shartle*, 514 F. App'x 77, 80
(3d Cir. 2013) (finding "some evidence" supported DHO's finding that petitioner
possessed cell phone based, in part, on photographs posted to Facebook that appeared
to be taken inside prison). Moreover, as mentioned above, Wilson has not been
consistent in his assertions as to where the photograph was taken. (ECF No. 10-2 at 3).

    As to Wilson's second argument, his statement at the UDC hearing contradicts

16

his position. At the UDC hearing, Wilson insisted that a company called Voices for Inmates made the posts to his Facebook page based on his instruction; now, he claims that only his nieces made his Facebook posts for him. (*Id.* at 2; ECF No. 2 at 3). Furthermore, the affidavit from Wilson's mother bears little significance to the issue as her statements only pertain to the *creation* of Wilson's Facebook page. (ECF No. 2 at 11). In contrast to his mother's assertion, Wilson stated at the DHO hearing that he "set up" his Facebook account. (ECF No. 10-3 at 2). In any event, it may very well be that Wilson's nieces *created* his Facebook page, as Wilson's mother asserts; however, that does not mean Wilson did not post from a cell phone to that page, and Wilson's mother's affidavit is silent on that issue. (*Id.*) Indeed, it is likely that Wilson's mother would not have known if Wilson was using a cell phone to access Facebook. Moreover, Wilson has not explained why he did not present any written statement from his mother at the DHO hearing. *See Coker v. Atkinson*, No. 6:14-CV-1272-JMC, 2015 WL 1311408, at *2 (D.S.C. Mar. 20, 2015) (finding belated affidavit from petitioner's wife was insufficient to defeat summary judgment in § 2241 action challenging disciplinary proceeding where petitioner did not explain why affidavit was not presented at DHO hearing).

Furthermore, the fact that Wilson's nieces may manage his Facebook page does not preclude a finding that Wilson possessed a cell phone and posted to his Facebook page. This is especially true when one reads the posts that the DHO considered in making his decision. For example, on November 4, 2010, a post was made using Wilson's Facebook account stating: "Ah my phone is broke so nobody hit me on that phone!" (ECF No. 10-3 at 19). The DHO questioned Wilson about this post at the hearing, surely finding it odd that Wilson's nieces would post about their own phones

being broken using Wilson's Facebook account. (ECF No. 10-3 at 2). Wilson had no response to the DHO's questioning on the issue, and the DHO was permitted to draw an adverse inference from Wilson's silence. *See Black v. Fox*, No. 1:11-CV-418, 2012 WL 3283316, at *3 (E.D. Tex. May 1, 2012) (noting that inmate's Fifth Amendment right to silence is not violated where DHO draws adverse inference from inmate's silence) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 320, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). Although Wilson now claims that he had his nieces post the November 4, 2010 statement on his Facebook page because he "did not wish to post in such a public manner that [he was] incarcerated," this recent explanation is belied by Wilson's consistent posts expressing that he missed his "peeps" or "everyone" along with the post on his page stating: "Yo 4 [*sic*] all who want to c [*sic*] me home soon [G]oogle me an [*sic*] find free [M]aleak [W]ilson...." (*Id.* at 17, 19).

Finally, as the DHO noted when citing the technician's report, a number of the Facebook posts made by Wilson's account between September 2, 2010, and March 24, 2011, contained a "Mobile Web" indication. (*Id.* at 3). Consequently, the technician indicated that these posts were evidence of the use of a cell phone. (*Id.* at 3).

Overall, the undersigned **FINDS** that sufficient evidence existed to justify the issuance of an incident report for possession of a cell phone contrary to Code 108. Furthermore, the undersigned **FINDS** that the DHO did not err in concluding that the greater weight of evidence supported a finding Wilson possessed a cell phone in violation of Code 108. Accordingly, the undersigned **RECOMMENDS** that Wilson's first ground for relief be **DENIED**.

### C. *Ex Post Facto* Claim

In his third ground for relief, Wilson argues that if he did possess a cell phone, he

should not have been charged with possession of a hazardous tool under Code 108, rather he should have been charged with a violation of Code 305, and charging him under Code 108 violated his rights under the *Ex Post Facto* Clause of Article I of the Constitution. (ECF No. 1 at 7; ECF No. 2 at 3-5). As mentioned above, in support of his position, Wilson cites the version of Code 108 that he believes was in effect at the time of his DHO hearing, as contained in the September 2009 Inmate Admission and Orientation Handbook. (ECF No. 2 at 3-4). In the September 2009 handbook, Code 108 proscribes the "[p]ossession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." (*Id.* at 8). Wilson notes that the August 2011 handbook contains an updated description of Code 108, which includes electronic devices, such as cell phones, as examples of hazardous tools. (*Id.* at 9-10).

The Constitution prohibits the federal government from enacting any *ex post facto* law. U.S. Const. art. I, § 9, cl. 3.[11] "To fall within the *ex post facto* prohibition, a law must be retrospective-that is, it must apply to events occurring before its enactment-and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (citations and markings omitted). In other words, a law violates the *Ex Post Facto* Clause when: (1) the law punishes as a crime an act previously committed, which was innocent when done; (2) makes "more burdensome the punishment for a crime after its commission"; or (3) deprives the

---

[11] The Constitution also prohibits the States from doing the same. U.S. Const. art. I, § 10.

accused of "any defense available according to law" at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)).

Assuming that the regulation at issue is a "law" within the meaning of the *Ex Post Facto* Clause, Wilson's claim fails because a cell phone constituted a hazardous tool within the meaning of Code 108 *long before* Wilson's conduct, hearing, and punishment.[12] Prior to Wilson's DHO hearing and the August 2011 change to the inmate handbook, inmates at FCI-Fort Dix were consistently informed that possession of a cell phone was punishable under Code 108 through prison-wide memoranda. *See, e.g.*, *Rice v. Hogsten*, No. 1:12-0406, 2014 WL 4656119, at *4 (S.D.W.Va. Sept. 16, 2014) (collecting cases recognizing that inmates at FCI-Fort Dix were advised by memoranda in May 2005, October 2006, and December 2009 that possession of cell phone would be considered violation of Code 108).[13] These memoranda were "kept in the inmate library and posted throughout the institution." *Myrieckes v. Caraway*, No. L-11-917, 2012 WL 527585, at *2 (D. Md. Feb. 16, 2012). In addition, inmates were also advised at "town hall meetings" that "if they were found to be in possession of a cell phone, they would be charged with a Code 108 violation." *Walden v. Longley*, No. 11-111, 2012 WL 4971885, at *1 (W.D. Pa. Sept. 13, 2012).

The August 2011 addition to the inmate handbook listing a cell phone as an example of a hazardous tool "did nothing to alter the definition of, or punishment for,

---

[12] As mentioned above, it appears that the regulation describing Code 108 was updated to include a cell phone as an example of a hazardous tool on March 1, 2011, prior to Wilson receiving an incident report. 28 C.F.R. § 541.3, tbl.1 (2011). Nonetheless, since the inmate handbook was not amended until August 2011, and some of the conduct relied upon by the DHO occurred before the March 2011 change to the regulation, the undersigned addresses the merits of Wilson's argument.

[13] Respondent asserts that Wilson was housed in FCI-Fort Dix at the time that the December 2009 memorandum was issued. (ECF No. 10 at 12).

possession of a hazardous tool." *Hathaway v. Outlaw*, No. 2:11CV00168, 2012 WL 851183, at *1-*2 (E.D. Ark. Mar. 14, 2012) (rejecting identical *ex post facto* argument and collecting cases from United States Court of Appeals for the Third Circuit finding possession of cell phone was properly considered violation of Code 108 prior to 2011 amendment); *see also Evans v. Martin*, No. 1:11-CV-682, 2011 WL 7423778, at *1-*2 (E.D. Tex. Dec. 27, 2011) (rejecting *ex post facto* claim with respect to Code 108 and cell phone possession); *cf. Myrieckes*, 2012 WL 527585, at *7 ("Contrary to [Petitioner's] assertion, the later explicit inclusion of cell phones in Code 108's list of 'hazardous tools' does not support the position that the rules, as existed at the time of [Petitioner's] offense, failed to encompass cell phones as a hazardous tool."). Indeed, the August 2011 amendment also noted that items such as "body armor" and "escape paraphernalia" were added to the list of hazardous tools; certainly, a reasonable person would not argue that those items were not encompassed by Code 108's definition of hazardous tools prior to the August 2011 handbook amendment. (ECF No. 2 at 10). Furthermore, this Court and other federal courts have regularly upheld disciplinary actions for possession of a cell phone under Code 108. *Rice*, 2014 WL 4656119, at *4-*5; *Rodriguez v. Mellady*, No. 5:12-CV-24, 2013 WL 1561123, at *3 (N.D.W.Va. Apr. 10, 2013) (collecting cases to support proposition that "[t]he absence of the term 'cell phone' in the text of Code 108 did not prevent the BOP from interpreting that provision to include this item."); *Thomas*, 2012 WL 2064531, at *3-*4; *Myrieckes*, 2012 WL 527585, at *6; *United States v. Beason*, No. 1:10CR105, 2011 WL 399896, at *9 (N.D.W.Va. Jan. 21, 2011) (recognizing that courts have "concluded for good reason that a cell phone constituted a hazardous tool within the meaning of Code 108."). As the DHO explained, cell phones fall within the definition of hazardous tools because they may be used in escape

attempts or to arrange the introduction of contraband. (ECF No. 10-3 at 4). Moreover, the possession of cell phones by inmates undermines the goal of prison officials to keep a close eye on inmate communication with the outside world, which aims to ensure that illicit or illegal activities are not being planned from within the prison. (*Id.*)

For the aforementioned reasons, the undersigned **FINDS** that cell phones fell within the definition of hazardous tools before Wilson's conduct at issue here and before he was sanctioned for that conduct. As such, the undersigned **FINDS** that Wilson's *ex post facto* claim is without merit. Accordingly, the undersigned **RECOMMENDS** that Wilson's third ground for relief be **DENIED**.

### IV.   <u>Proposal and Recommendation</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED**;

2. Respondent's request for judgment in her favor (ECF No. 10) be **GRANTED**;

3. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such

objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and counsel of record.

**FILED:** August 21, 2015

Cheryl A. Eifert
United States Magistrate Judge